**Royce ACUFF, Appellant,**

v.

**The LAMESA NATIONAL BANK, Appellee.**

No. 11–95–011–CV.

Court of Appeals of Texas, Eastland.

Feb. 29, 1996.

R. Byrn Bass, Jr., Harding, Bass, Fargason & Booth, Lubbock, for appellant.

William Riley Nix, Sherman, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

DICKENSON, Justice.

Plaintiff, The Lamesa National Bank, recovered a summary judgment for the balance due on eleven promissory notes signed by defendant, Royce Acuff. Ten of the notes had been co-signed by defendant's father, Grady Acuff, and secured by Grady Acuff's certificates of deposit and shares of stock.

Defendant argues that the Bank is not entitled to a "deficiency judgment" against him because it failed to give him the notice required by TEX. BUS. & COM. CODE ANN. §§ 9.504 and 9.505 (Vernon 1991) when the Bank accepted the collateral from his father in partial payment of the notes. We hold that Sections 9.504 and 9.505 do not apply because the Bank did not unilaterally dispose of the collateral; the owner of the collateral sold it to the Bank at an agreed value in partial satisfaction of the amounts owed. The summary judgment is affirmed.[1]

### Points of Error

Appellant argues in his first point of error that the trial court erred in granting the Bank's motion for summary judgment:

> [F]or the deficiencies due on the Notes in the face of the Bank's failure to give notice to Defendant prior to the disposition of its collateral as required by the Texas Business and Commerce Code, §§ 9.504 and 9.505.

Our ruling on the first point of error is dispositive. Appellant argues in his other points that the trial court erred: (Point Two) in granting summary judgment when there was a fact issue as to whether the Bank disposed of the collateral in a commercially reasonable manner; (Point Three) in granting summary judgment "in light of the Bank's failure to properly plead" that it disposed of the collateral in a commercially reasonable manner after that issue had been raised by defendant's pleadings; and (Point Four) in failing to grant defendant's conditional motion for continuance.

### Summary Judgment Proof

Appellant agrees in his brief that the following facts are not disputed.

The Notes sued on by the Bank, with one exception, were all co-signed as co-maker by Defendant's father, Grady Acuff. The Notes were collateralized by Grady Acuff's CD's [and] Foster Gin stock. For a number of years, Defendant did business

---

1. The amount due on the date of the summary judgment hearing, September 15, 1994, for principal and interest on eleven promissory notes was $849,330.51. Plaintiff also recovered interest on a daily rate basis from the date of that hearing until the entry of judgment on December 9, 1994, plus attorney fees of $3,000.00 and post-judgment interest.

with his father as an equal partner in two partnerships, one known as Center Gin or Center Gin Co. and the other known as Acuff Farms. Defendant signed all eleven (11) Notes on which the Bank sued. His father, Grady Acuff, signed ten (10) of the Notes. The deterioration of the business of the two partnerships led to an estrangement of relationship between Defendant and his father....

Before the suit was filed, and without notice to Defendant ... Grady Acuff transferred to the Bank for credit the CD's [$405,000.00] plus interest accrued thereon as well as the Foster Gin stock [for an agreed credit of $500,000.00 on the notes]. The Bank then sued Defendant for the deficiencies on the Notes, in excess of $800,000.00.

*Sections 9.504 and 9.505*

Section 9.504 gives a "secured party" the right to sell or dispose of collateral after the debtor's default, but it requires that "reasonable notification" of the time and place of sale shall be sent "by the secured party to the debtor." Section 9.505 gives the "secured party" the right to retain the collateral in satisfaction of the debtor's obligation.

█ These sections do not apply to the case before us because the owner of the collateral transferred that property to the Bank for an agreed credit on his debt. The agreement between the Bank and Grady Acuff specifically provided in pertinent part:

1. *Acknowledgements by Acuff.* Acuff hereby acknowledges and agrees that:

(a) As of April 27, 1994, the outstanding principal balance of, and accrued unpaid interest on, the Center Gin Notes is: $1,396,500.00 principal plus accrued unpaid interest [$141,798.35].

(b) As of the date hereof, the outstanding principal balance of, and accrued unpaid interest on, the Farm Note is: $125,000.00 principal plus accrued unpaid interest [$12,942.09].

2. *Liquidation of Certificates of Deposit.* Acuff agrees that ... Lender has set-off the proceeds of the Certificates of Deposit. Lender agrees that the outstanding principal of, and interest on, the Center Gin Notes have been reduced by the CD Balance.

3. *Transfer of Foster Gin Stock.*

(c) *Purchased Price.* In consideration for the sale, assignment, conveyance, transfer and delivery of the Foster Gin Stock, Lender agrees to reduce the outstanding principal of, and interest on, the Center Gin Notes by the amount of $500,000.00 (the "Purchase Price"). [The summary judgment proof shows that Grady Acuff owned one-half of the common stock of the Foster Gin Company.] [2]

4. *Confirmation of Indebtedness.* Acuff agrees that, after giving effect to the transactions described in Sections 2 and 3 above, (a) the outstanding principal balance of the Center Gin Notes as of June 8, 1994, is $477,804.68 and the lawful accrued unpaid interest thereon is $158,714.24, and (b) the outstanding principal balance of the Farm Note is $125,000.00 and the lawful accrued and unpaid interest thereon is $14,308.52.

5. *No waiver.* Nothing contained herein shall constitute a waiver of any of Lender's rights.... Nor is Lender in any way accepting the Foster Gin Stock [or] the Time Share Deposits mentioned in paragraphs 2 and 3 above as a complete discharge of the Center Gin Notes [or] the Farm Note.

6. *Representations and Warranties.* In order to induce Lender to execute this agreement, Acuff hereby represents and warrants to Lender as follows:

(e) The Purchase Price to be received by Acuff in connection with the transfer of the Foster Gin Stock to Lender hereunder is reasonably equivalent to if not greater than the value of the Foster Gin Stock.

2. The other one-half interest was owned by Paul Turner. On April 4, 1994, Paul Turner signed and certified a statement of the assets and liabilities of Foster Gin Company which showed a net worth for 100 percent of the common stock of $890,728.82. The Bank agreed with Grady Acuff to give him $500,000.00 credit for his one-half interest in the corporation.

Appellant cites *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769 (Tex.1982), in support of his contention that the Bank cannot recover a deficiency judgment against him because he did not receive notice before the disposition of the collateral which secured the notes upon which he was sued. That case is factually distinguishable. In *Tanenbaum*, the debtor was the owner of the property, and the creditor was the party which disposed of the collateral. In the case before us, Royce Acuff was not the owner of the collateral. His father sold the collateral to the creditor in partial payment of the debts. The creditor did not unilaterally foreclose upon the collateral without notice to the owner. The Supreme Court held in *Tanenbaum*, supra at 771:

> Section 9.504 gives the *creditor* the widest leeway in choosing whatever means of disposition of the collateral he considers most advantageous.... The only limits on the *creditor's* disposition of the collateral is that it must be commercially reasonable, and must be made only after notification to the debtor if required by Section 9.504. Then and only then is he entitled to sue for a deficiency. (Emphasis added)

Appellant also cites *Gray v. Federal Deposit Insurance Corporation*, 841 S.W.2d 72 (Tex.App.—Houston [1st Dist.] 1992), *remanded for settlement*, 848 S.W.2d 85 (Tex. 1993). Appellant claims that *Gray* is a "case with analogous facts" to the case before us. We disagree. In the case before us, the owner of the collateral voluntarily sold it to the Bank in partial satisfaction of the debt. In *Gray*, the creditor made a unilateral sale of the collateral.

Appellant argues that notice to one of the two co-makers of the note is not sufficient notice to the other co-maker under Section 9.504; however, there was no notice requirement on the facts before us. There was not a sale under Section 9.504; the owner of the collateral made the voluntary sale to the Bank. There was no sale or disposition by the "secured party" which would require notice under Section 9.504. The first point of error is overruled.

 Points of Error Nos. 2 and 3 are overruled because the Bank did not dispose of the collateral. The owner of the collateral agreed to the transfer of his certificates of deposit and of his common stock in Foster Gin Company; consequently, the Bank had no duty to plead or prove that the disposition of the collateral was in a commercially reasonable manner. Point of Error No. 4 is overruled because the conditional motion for continuance was urged to give appellant the opportunity to prove a fact issue as to whether the sale of the Foster Gin Company stock was done in a commercially reasonable manner. That would be an immaterial fact issue because the sale by the owner of the collateral is not subject to the requirements of Sections 9.504 and 9.505.

The judgment of the trial court is affirmed.